**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

FIRST LOOK INSTITUTE, INC.

      Appellant,

      v.                      No. 24-5257

U.S. AGENCY FOR GLOBAL MEDIA

      Appellee.

**RESPONSE TO APPELLEE'S
<u>MOTION FOR SUMMARY AFFIRMANCE</u>**

# TABLE OF CONTENTS

**Page**

BACKGROUND…………………………………………………………...4

ARGUMENT…………………………………………………………….7

    A. This Appeal Should Not Be Resolved on Summary Affirmance………..7

    B. First Look Does Not Rely Solely on Timing to Establish Eligibility……9

    C. USAGM's Belated Decision to Produce Missing Records Further
       Reinforces First Look's Eligibility…………………………………...14

    D. USAGM's Post-Hoc Explanations Do Not Preclude Eligibility for
       Fees…………………………………………………………………..16

CONCLUSION…………………………………………………………...22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Immigr. Council v. Dep't of Homeland Sec.*,
    82 F. Supp. 3d 396 (D.D.C. 2015)....................................................................16

*Campbell v. DOJ*,
    164 F.3d 20 (D.C. Cir. 1998), *as amended* Mar. 3, 1999 ..................................17

*Davy v. CIA*,
    550 F.3d 1155 (D.C. Cir. 2008)......................................................................21

*Drake v. FAA*,
    291 F. 3d 59 (D.C. Cir. 2002)...........................................................................7

*Elec. Privacy Info Ctr. v. FTC*,
    2020 WL 3248983 (D.D.C. June 16, 2020).....................................................10

*Env't Def. Fund v. EPA*,
    2022 WL 136792 (D.D.C. Jan. 13, 2022)...................................................10, 18

*First Amend. Coal. v. DOJ*,
    878 F.3d 1119 (9th Cir. 2017) .......................................................................2, 9

*Grand Canyon Tr. v. Bernhardt*,
    947 F.3d 94 (D.C. Cir. 2020) (per curiam)................................................*passim*

*Harrison v. Off. of Architect of Capitol*,
    2015 WL 6472167 (D.C. Cir. July 16, 2015) ....................................................8

*Inst. for Energy Rsch. v. FERC*,
    2024 WL 3327369 (D.D.C. May 22, 2024).....................................................15

*Kwoka v. IRS*,
    989 F.3d 1058 (D.C. Cir. 2021).........................................................................2

*McDonnell Douglas Corp. v. Air Force*,
    375 F.3d 1182 (D.C. Cir. 2004).......................................................................18

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007).......................................................................17

*Nat'l Parks Conservation Ass'n v. Dep't of the Interior*,
2024 WL 1344450 (D.D.C. Mar. 29, 2024) ...................................................18, 19

*Protect the Pub.'s Tr. v. IRS*,
2024 WL 663427 (D.D.C. Feb. 16, 2024) ........................................................21

*Sierra Club v. EPA*,
2021 WL 7210058 (D.D.C. Mar. 31, 2021) ......................................................13

*Sills v. Bureau of Prisons*,
761 F.2d 792 (D.C. Cir. 1985) ..............................................................................7

*Summers v. DOJ*,
569 F.3d 500 (D.C. Cir. 2009) ..............................................................................3

*Taxpayers Watchdog v. Stanley*,
819 F.2d 294 (D.C. Cir. 1987) ..............................................................................7

*Turner v. USAGM*,
502 F. Supp. 3d 333 (D.D.C. 2020)........................................................................3

*Urb. Air Initiative, Inc. v. EPA*,
442 F. Supp. 3d 301 (D.D.C. 2020)......................................................................20

*Webster v. Del Toro*,
49 F.4th 562 (D.C. Cir. 2022)................................................................................7

*Zynovieva v. U.S. Department of State*,
2023 WL 2755599 (D.D.C. Mar. 31, 2023) ......................................................11

**Federal Statutes**

5 U.S.C. § 552 (FOIA)......................................................................................*passim*

5 U.S.C. § 555 (Administrative Procedure Act) ......................................................1

USAGM improperly seeks to summarily dispose of this appeal, which involves fundamental errors of fact and law by the District Court, as well as issues of first impression in this Circuit related to the Freedom of Information Act ("FOIA").

In denying Plaintiff-Appellant First Look Institute, Inc.'s ("First Look") motion for attorneys' fees, the District Court misapplied this Circuit's application of the "catalyst theory" of FOIA fees eligibility, which permits fee recovery based on an agency's voluntary change in position. 5 U.S.C. § 552(a)(4)(E)(ii)(II). Specifically, the District Court not only ignored the unrebutted factual record of Appellee U.S. Agency for Global Media ("USAGM")'s pre-lawsuit inaction and its post-hoc justifications, but also constrained the catalyst theory to effectively bar many prevailing FOIA plaintiffs from recovering fees in this Circuit. Such weighty questions should not be disposed of summarily, and merit full briefing and argument. For these reasons alone, summary affirmance is improper. But beyond that, the District Court's decision is directly at odds with congressional intent in enacting FOIA and amending it to incorporate the catalyst theory.

FOIA was conceived in response to agencies' abuse of the Administrative Procedure Act, relying on it to improperly withhold information from the public rather than as a tool for disclosure. H. Rep. No. 89-1497, 26 (1966); S. Rep. No. 89-813, 40 (1965). Time and again, Congress emphasized that disclosure is "useful only

if it is timely," observing that, "[w]ith information like justice, delay can be tantamount to denial." 120 Cong. Rec. S19806-S19823, 439 (1974); *see First Amend. Coal. v. DOJ*, 878 F.3d 1119, 1129 (9th Cir. 2017) ("*[W]hen* information is delivered may be as important as *what* information is delivered.") (citation omitted). Particularly regarding the press, Congress recognized "[t]oo often agencies realize that delay in responding to a press request … can … moot the story being investigated," S. Rep. No. 93-854, 175 (1974).

In addressing agencies' foot-dragging in responding to disclosure requests, Congress was determined that agencies not be able to use "backlogs" or "interminable delays to avoid embarrassment [and] delay the impact of disclosure." S. Rep. No. 104-272, 28 (1996); S. Rep. No. 93-854, 177-79 (1974). Congress therefore imposed mandatory, not aspirational, time limits to save FOIA from being a "toothless tiger," 120 Cong. Rec. S17828-S17830, S17971-S17972, 368 (1974).

On top of these time limits, and particularly relevant for this appeal, Congress also enacted a fees provision to provide "compensation for enduring an agency's unreasonable obduracy in refusing to comply with" FOIA and disincentivize "administrative resistance to disclosure." *Kwoka v. IRS*, 989 F.3d 1058, 1063 (D.C. Cir. 2021) (citations omitted). Subsequently, to address the concern that agencies were dodging FOIA fees by providing requested records after the initiation of litigation but prior to a court decision favorable to the requester, Congress amended

FOIA to "incorporate the catalyst theory," allowing recovery of fees in the case of a "voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E)(ii)(II); *see also Summers v. DOJ*, 569 F.3d 500, 503 (D.C. Cir. 2009)).

The District Court's decision would undermine these core legislative purposes of FOIA. Through this lawsuit, First Look obtained 12,663 pages of records related to a matter of critical public interest and importance: the controversial seven-month tenure of USAGM's former leader, Michael Pack, from June 2020 to January 2021, during which time, in close coordination with the White House, he sought to politicize USAGM's *Voice of America* broadcast service[1] in violation of its journalistic "statutory firewall."[2] The documents obtained by First Look not only illuminate that tumultuous period,[3] but also may foretell future agency action at USAGM with President Trump's return to office. Yet the District Court made fundamental errors overlooking the urgent context in which these records were

---

[1] USAGM is the parent agency of *Voice of America* and other broadcast services. https://www.usagm.gov/networks/.

[2] The "statutory firewall" guarantees "networks' journalistic independence in the face of government oversight" by barring USAGM political appointee employees from interfering with the services' editorial policies and judgment. *Turner v. USAGM*, 502 F. Supp. 3d 333, 344 (D.D.C. 2020).

[3] Documents revealed, for example, that Mr. Pack and senior USAGM officials (1) closely coordinated with the White House regarding the purge of *VOA* journalists and circumvention of the statutory firewall; (2) spent millions investigating their own employees; and (3) repeatedly stonewalled Congressional oversight.

requested; ignoring the undisputed facts that USAGM, by its own admission, had not even taken any steps to process the request, let alone determined whether it would produce records; and hollowing out the catalyst theory by blindly accepting USAGM's post-hoc justifications.

First Look submits that (1) the District Court erred in concluding that First Look did not substantially prevail and therefore is ineligible for attorneys' fees under the catalyst theory, and (2) USAGM has failed its burden of showing this matter is ripe for summary affirmance. Accordingly, First Look respectfully requests that the Court deny USAGM's motion for summary affirmance.

## BACKGROUND

This lawsuit arose out of a pivotal and controversial moment in USAGM's history. For decades, *Voice of America* had been respected worldwide for its independence and objectivity. Mot. Fees (R.40-1) 6. During the final year of his first term, President Trump repeatedly criticized *VOA*'s coverage of his administration. *Id.* In June 2020, President Trump appointed Michael Pack as the new USAGM CEO, reportedly seeking more favorable coverage of his administration's policies and actions. *Id.* Shortly after Mr. Pack's appointment, he fired the chiefs of several USAGM news services, replacing them with political appointees. *Id.* at 7. He also refused to extend the J-1 visas of foreign journalists working at *VOA*, resulting in the expulsion of some of them from the U.S. *Id.*

4

Mr. Pack and his staff also sought to eliminate the statutory firewall that protected *VOA* from politically motivated interference by USAGM; investigated the services' journalists for alleged anti-Trump bias; attempted to ferret out supposed "spies" at the agency; paid nearly $4 million to two law firms to conduct personnel investigations later condemned by the State Department Office of Inspector General as an abuse of authority carried out with "retaliatory animus." *See* https://tinyurl.com/3pnc6nvu. *Id.* As these events unfolded, numerous publications, including *The Intercept* (then affiliated with First Look)[4], reported on the story with the limited information available. *Id.*

Against this backdrop, First Look and one of its reporters submitted a FOIA request to USAGM on October 7, 2020, seeking records relating to USAGM's adverse actions against *VOA* foreign journalists and White House involvement. *Id.* at 7-8. USAGM never responded to or communicated any intention to process First Look's request, let alone disclosed the requested documents, or provided any explanation for its failure to respond, in complete disregard of the Act's statutory time limits. *Id.* at 9. Nearly two months later, on December 1, 2020, with the news cycle running, its efforts to timely obtain the requested records stymied, and facing the reality that access delayed would be tantamount to access denied, First Look was compelled to file suit. *Id.*

---

[4] In 2023, Intercept Media, Inc. became a separate non-profit.

Even after the lawsuit was commenced, USAGM continued to stonewall, stating in its answer, and again in its amended answer, that it had not decided whether it would disclose the requested documents. Answer (R.6) 2; Am. Answer (R.9) 2. It was not until the parties negotiated their first Joint Status Report ("JSR") that USAGM finally agreed to produce the requested records.

USAGM took a year to complete its initial productions, but even then its productions were incomplete. *Id.* at 10. In January 2022, First Look discovered that USAGM had failed to produce numerous email attachments, despite USAGM's representations that it had fully responded to the request. *Id.* When confronted, USAGM flatly *refused* to assess its productions to identify the gaps, instead forcing First Look to painstakingly parse more than 7,000 pages to identify the missing documents. *Id.* Months later, USAGM finally admitted that, contrary to its assertions, it had not produced all attachments. The agency did not complete production of the 4,949 missing pages until October 2022, nearly two years after the case was filed. *Id.*

First Look moved for attorney's fees on October 13, 2023. Mot. Fees (R.40). On August 9, 2024, Magistrate Judge Upadhyaya issued a Report & Recommendation finding that First Look was not eligible for fees, which the District Court adopted over First Look's objections. R.&R. (R.46); Obj. R.&R. (R.47); Op. (R.50-51). This appeal followed.

## ARGUMENT

### A.    This Appeal Should Not Be Resolved on Summary Affirmance

USAGM makes little effort to meet *its burden* of establishing that this appeal should be resolved at the early stage of summary affirmance.  Mot. at 2.  Instead, it conclusorily asserts that summary affirmance is a low bar and "no benefit will be gained from further briefing and argument."  *Id.*  But this Circuit – in the very case USAGM cites – stated the opposite.  A party seeking summary disposition "bears the *heavy burden* of establishing that the merits of [the] case are so clear that expedited action is justified."  *Taxpayers Watchdog v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (emphasis added); *see also Webster v. Del Toro*, 49 F.4th 562, 566 n.1 (D.C. Cir. 2022) ("We do not grant summary affirmance lightly[.]"); *Sills v. Bureau of Prisons*, 761 F.2d 792, 794 (D.C. Cir. 1985) (summary disposition appropriate only where case merits have already received "the fullest consideration necessary to a just determination").

Moreover, at this early stage, this Court is "obligated to view the record and the inferences to be drawn therefrom 'in the light most favorable to [nonmovants].'"  *Taxpayers*, 819 F.2d at 297 (citation omitted).  Where, like here, the District Court failed to apply the correct legal standard, overlooked key facts, and afforded unwarranted deference to USAGM's declarant, summary disposition is inappropriate.  *See Drake v. FAA*, 291 F. 3d 59, 66 (D.C. Cir. 2002) (summary

affirmance denial where "not clear" that district court properly applied relevant legal doctrines).

Here, the issues are not nearly as "straightforward" as USAGM suggests, as the District Court erred by misapplying legal standards and ignoring key facts. Mot. at 2; *compare with Harrison v. Off. of Architect of Capitol*, 2015 WL 6472167, at *1 (D.C. Cir. July 16, 2015) (summary affirmance where "no effort to show" how application of a different [legal] standard would have changed outcome). The instant appeal involves this Circuit's application of the catalyst theory of FOIA fees eligibility. This Circuit last substantively addressed the catalyst theory five years ago, when it reiterated that FOIA plaintiffs could invoke the theory in light of recent precedent and FOIA amendments. *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020) (per curiam). But the Circuit has yet to weigh in on this appeal's unique questions, including whether a FOIA plaintiff is eligible for fees under the catalyst theory where the agency made *no* decision on, took *no* affirmative action regarding, and engaged in *no* communication about the FOIA request pre-suit, and then presented post-hoc evidence of a purported administrative backlog that it never sought to remedy during the action. Further, in holding First Look ineligible for attorney's fees, the District Court made errors of law and fact, including by ignoring USAGM's record of total pre-suit inaction and its post-hoc invocations of administrative delays that were significantly of the agency's own making. More

fundamentally, in light of the perverse effect of agency foot-dragging on effectuation of FOIA's core goal of timely disclosure, the Court may wish to consider refinement of its catalyst theory jurisprudence, which has been called for in this Circuit and others.[5]

These questions have significant consequences for FOIA plaintiffs, remain unanswered by lower courts in this Circuit, and should be addressed by this Court with the benefit of full briefing and argument.

### B.    First Look Does Not Rely Solely on Timing to Establish Eligibility

Both the District Court and USAGM's motion make the same fundamental error: They assume that First Look "relie[s] solely on timing" – i.e., the production of records following the initiation of the lawsuit – to establish its fees eligibility under the catalyst theory. Mot. at 9; Op. (R.51) 5. Not so. While First Look believes that timing (i.e., correlation) should be adequate to support a fee award, *see* n.5 *supra*, First Look did not rely below solely on the mere filing of its complaint and USAGM's subsequent release of records to establish eligibility.

---

[5] *See, e.g.*, *Grand Canyon Tr.*, 947 F.3d at 98-100 (Randolph, J., concurring) ("The conclusion is inescapable – [the fees provision] does not embody the catalyst theory. It does not do so because the provision requires only correlation not causation."); *First Amend. Coal.*, 878 F.3d at 1130, 1136 (Berzon, J., concurring) ("statute is clear; we need not go outside its text to know that FOIA plaintiffs don't need to show causation to collect fees").

Instead, First Look relied upon, but USAGM and the District Court ignored, the foundational logic of the catalyst theory: A court must holistically examine what an agency did and did not do *in the pre-lawsuit period* as predictive of a hypothetical world in which a plaintiff did not pursue litigation.  For example:

- Did the agency miss the 20-day statutory deadline?

- Had the agency begun its search for records, produced any records, or otherwise processed the request such that a lawsuit only furthered an inevitable outcome?

- Did the agency communicate its position on the request, even preliminarily, to the requester?

- Did the agency "acknowledge any legal obligation to produce responsive records before the litigation commenced" or that it intended to do so?

- Did the agency provide a contemporaneous description of any supposed backlog?

- Was the agency transparent about the request status, including anticipated production/completion dates, or were communications "sporadic and nonsubstantive"?

- And, therefore, was the requester in a position to reasonably expect that documents would be forthcoming without having to resort to litigation?

*See Grand Canyon Tr.*, 947 F.3d at 94; *Env't Def. Fund v. EPA*, 2022 WL 136792, at *5 (D.D.C. Jan. 13, 2022); *Elec. Privacy Info Ctr. v. FTC*, 2020 WL 3248983, at *5 (D.D.C. June 16, 2020).  If the answers are "No," as they are here, the catalyst theory applies.

This Circuit's case law reinforces this conclusion.  For example, in *Grand Canyon* (cited by USAGM, Mot. at 9, 11), the Court found the plaintiffs were

ineligible for fees under the catalyst theory where the agencies had taken substantial

steps to process the request *pre-suit*:

- The agencies had "begun processing the plaintiff's request well *before* this lawsuit was initiated and that both agencies had even made partial releases . . . *before* the complaint was filed";

- Neither agency "suggested it would fail to comply with the request; to the contrary, both gave the plaintiff their predictions as to when production would be completed" *prior* to the lawsuit; and

- Both agencies completed productions within four months of the lawsuit's start, which was "reasonably close" to the agencies' original "predictions" "*before* the litigation began," and these "disclosures were satisfactory to the plaintiff."

*Id.* at 97-98 (emphasis added).

More recently, in *Zynovieva v. Department of State* (cited by USAGM, Mot.

at 10), this Circuit similarly affirmed the finding that the catalyst theory was

inapplicable where the agency "repeated[ly] communicat[ed] with [the requester]

prior to her lawsuit," *Zynovieva*, 2023 WL 2755599, at *5, 7 (D.D.C. Mar. 31, 2023);

*see Zynovieva*, 2024 WL 1946592, at *1 (D.C. Cir. Apr. 30, 2024), and the agency

had an "avowed policy of releasing the kinds of documents" at issue as a "matter of

course," 2024 WL 1946592, at *7, thus providing the plaintiff with certain indication

that the agency would have "released [the] documents to [plaintiff] in due course,

even if she had never brought suit." 2023 WL 2755599, at *5, 7.

Here, USAGM's pre-suit conduct deviated on *every count* from the agencies'

actions in *Grand Canyon* and *Zynovieva*. Before this litigation, after missing the 20-

day statutory deadline, USAGM did not communicate with First Look (despite First Look's multiple attempts to contact USAGM), produce any documents, provide any indication it had begun processing the request, acknowledge its legal obligation or intent to disclose responsive non-exempt records, contemporaneously describe any supposed backlog, or provide any estimate as to when documents would be produced. Even after the lawsuit began, USAGM stated in its Answer, and again in its Amended Answer, that it had not decided whether it would disclose the requested records, proof positive that it had neither decided to disclose nor begun processing the documents prior to the suit, Answer (R.6) 2; Am. Answer (R.9) 2, statements that also cast doubt on the credibility of USAGM's assertions that it always "plainly intended to disclose the records." Resp. Obj. R.&R. (R.48) 3. It was only this litigation, beginning with the negotiation of a monthly production schedule and followed by 20 monthly Joint Status Reports to the District Court on progress and disputes, that caused USAGM to produce the requested records.

In fact, USAGM did not complete its initial productions until December 2021, one year after the case was filed. But far from USAGM's productions being "satisfactory", First Look subsequently discovered more than 4,000 pages of missing attachments that were only fully produced in October 2022, nearly two years after the case began, and only because of First Look's diligence, not USAGM's.

USAGM has never contested these facts – nor did the District Court find otherwise. Instead, both the agency and the District Court embrace the skewed logic that USAGM "would have released the records requested in the absence of litigation," without citing a single shred of contemporaneous evidence reflecting any action taken prior to the litigation that manifested such intent. Mot. at 10. Indeed, the District Court and USAGM ignore what USAGM's pleadings make clear -- that USAGM had not made a determination prior to the lawsuit as to whether it would produce documents. Answer (R. 6) 2; Amended Answer (R. 9) 2; *see also Sierra Club v. EPA*, 2021 WL 7210058, at *2 (D.D.C. Mar. 31, 2021) (rejecting agency's post hoc claim that it "would have produced" responsive records in part because "nowhere in its Answer did [the agency] indicate that it was prepared to produce records"). Not until January 26, 2021, in the parties' initial JSR, did USAGM first evince any intent to produce documents, clearly reflecting that this lawsuit was the decisive factor in prompting productions. JSR (R.12) 1. The undisputed record of USAGM's inaction and indecision prior to this lawsuit alone demonstrates that this case is nothing like *Grand Canyon* and *Zynovieva,* where the agencies had a demonstrated record of ample action and communication with the plaintiffs *prior* to the lawsuit. The unrebutted factual record of USAGM's pre-lawsuit indecision, inaction, and total silence, as well as this Circuit's controlling precedent, compel a different conclusion here.

## C. USAGM'S Belated Decision to Produce Missing Records Further Reinforces First Look's Eligibility

USAGM's record of inaction alone suffices to support a finding of First Look's eligibility for fees. But on top of that, this lawsuit additionally caused the production of thousands of pages of missing documents.

The District Court erroneously embraced USAGM's disingenuous claim that the agency never took a position not to produce the email attachments. Mot. at 12; Op. (R.51) 10-11. But to the contrary, there is significant "evidence suggesting that USAGM [] affirmatively decided that it would not produce the email attachments." Op. (R.51) 11. In December 2021, USAGM represented to the District Court in the parties' JSR that following its next release, its production would be complete. JSR (R.25) 2. That month, as First Look reviewed the 7,714 pages of produced records, it discovered that large numbers of attachments to produced records were missing. When First Look questioned the completeness of the production, USAGM doubled down, again falsely claiming that all attachments had been produced, stating that responsive attachments to disclosed emails were produced "generally immediately after that document," except for entirely exempt documents. *See* Reply (R.42) 6-9. That same month, 11 months after it began producing requested records, it represented to the District Court in the parties' JSR that its production was complete, *even after* First Look raised the issue of the missing documents. *See* JSR (R.26) 2 ("USAGM's position is … the request has been completed and USAGM has

provided all potentially responsive records identified by Plaintiffs.").  Then, instead of independently confirming whether its productions were complete, USAGM continued to insist that all attachments had been produced, *see id.* at 3 ("USAGM has completed its productions in this case"), while simultaneously insisting that First Look "parse through the records . . . to make note of which attachments [it] believe[s] have not been produced and raise the matter with the agency at the end of their review," which in the agency's view, "should not be such an onerous task."  *Id.*

USAGM's flippancy aside, it then refused to search for or produce the missing documents until First Look's counsel specifically identified each and every attachment that was missing and where it belonged—a task that required counsel to meticulously review 7,714 pages of previously produced documents to identify nearly 5,000 pages of missing attachments.  *Id.*  Only months later did USAGM belatedly admit that it had failed to produce thousands of pages of responsive records, contradicting its prior representations, and only after First Look repeatedly pressed the issue *and* did the agency's work of identifying the missing documents.  *Id.*; *see* JSR (R.30) 2.

For that reason, the District Court's reliance on *Institute for Energy Research*, where the agency *itself* "*discovered* the mistake, then promptly corrected the mistake, *without plaintiff's prompting*," is entirely misplaced.  Op. (R.51) 12 (citing *Inst. for Energy Rsch.* 2024 WL 3327369, at *5 (D.D.C. May 22, 2024) (emphases

added).  Indeed, USAGM's approach to the missing attachments is exactly the kind of "180-degree reversal from [an agency's] initial position" that indicates a plaintiff has substantially prevailed and demonstrates the catalyst effect of the plaintiff's lawsuit.  *Am. Immigr. Council v. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 404 (D.D.C. 2015) (plaintiff eligible for fees where agencies released 156 documents after taking the position that "no further responsive records" existed)[6].  Here, as in *Am. Immigr. Council*, "[w]hether the agency's initial shortcoming resulted from bad faith, laziness, or human error is of no moment."  *Id.* at 404-05.

There is absolutely no evidence, and USAGM has proffered none, that the agency would ever have produced the missing attachments had it not been for this lawsuit and First Look's diligent prosecution.

### D.     USAGM's Post-Hoc Explanations Do Not Preclude Eligibility for Fees

Finally, the District Court's decision, and USAGM's motion, critically err by excusing USAGM's pre-suit inaction on the basis of its purported administrative delay, which was never mentioned by USAGM to First Look in the 55 days of silence that followed the FOIA request.  Mot. at 9-13; Op. (R.51) 7-8.  USAGM now

---

[6] When an agency asserts no more responsive records exist but conducts a new search and finds more after plaintiff "expend[s] significant time and energy spelling out the deficiencies in [the agency]'s search efforts," a court may conclude the lawsuit was "a necessary catalyst[.]"  *Am. Immigr. Council,* 82 F. Supp. 3d at 403-04.

seeks to hide behind its post-hoc explanation that it always planned to produce records, *see* Resp. Obj. R.&R. (R.48) 3, but experienced an uptick in FOIA requests; had a backlog of requests; and was experiencing staffing shortages. Mot. at 9-13. But as this Circuit has made clear, "deference" to an agency's post-hoc declaration is "not equivalent to acquiescence." *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998), *as amended* Mar. 3, 1999. The catalyst theory requires that a court examine an agency's proven record of pre-lawsuit action, not just blindly accept its post hoc proffer of administrative justifications. The District Court did not do so here.

The record is clear that USAGM did *nothing prior* to First Look filing suit. USAGM did not contemporaneously invoke any administrative backlog; it did not provide any indication that it had even *begun* processing First Look's request; nor did it express any acknowledgment of an obligation, or intention, to release any records. USAGM remained absolutely silent, leaving First Look in the dark not only about whether USAGM would disclose responsive records but even about whether, or when, USAGM would respond in any way to the request. While this Circuit has not taken up this specific question in the context of the catalyst theory, it has firmly established that an agency's "*post hoc* explanation" in its briefing "cannot make up for the fact" that the agency failed to adequately communicate its position prior to the FOIA lawsuit. *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *see also*

*McDonnell Douglas Corp. v. Air Force*, 375 F.3d 1182, 1188 (D.C. Cir. 2004) ("We do not rely upon counsel's *post hoc* rationale for upholding an agency's action.").

On this specific point in the catalyst theory context, lower courts in this Circuit have made clear that plaintiffs are eligible for fees, notwithstanding claimed administrative burdens, when the agency had not "previously provided any 'predictions as to when production would be completed' or any timeline at all, only the number of how many other requests were ahead in the queue." *Nat'l Parks Conservation Ass'n v. Dep't of the Interior*, 2024 WL 1344450, at *25 (D.D.C. Mar. 29, 2024). While the agency "may well have eventually produced documents without litigation pressure, the evidence signals that the lawsuit directly spurred an [agency] commitment to review a certain number of pages per month, as well as an initial release of records shortly thereafter," and therefore it is "more likely than not that 'the threat of an adverse court order'" in fact explained the agency's response. *Id.* (citation omitted); *see also Env't Def. Fund v. EPA*, 2022 WL 136792, at *4-5 (D.D.C. Jan. 13, 2022) (stating that agency "cannot simply cite administrative burdens and thereby automatically avoid paying fees," and finding plaintiffs eligible for fees where agency did not "acknowledge any legal obligation to produce responsive records before the litigation commenced," "never indicated in its pre-lawsuit communications that it would begin producing responsive records," its "answer contained no such indication, either," and "that is a change in position by

the agency … catalyzed by the … lawsuit").  The same reasoning and conclusion of both of these cases apply here, and even more so given that USAGM did not communicate with First Look prior to the litigation even about "the number of how many other requests were ahead in the queue" or indeed about anything related to First Look's request.  *Nat'l Parks Conservation*, 2024 WL 1344450, at *25.

This logic applies notwithstanding USAGM's claimed backlog and staffing shortages.  Although USAGM experienced an increase from an average of about 56 requests between FY2016 - 2019 to 60 requests in June-December 2020 (Mot. at 2-3), it never explains (nor did the District Court consider) why the agency failed to address its own staffing shortage or account for its purported backlog.  Nor does it explain how this backlog affected the processing of First Look's request – which was only USAGM's "third request" for FY2021.  McLaren Dec. (R.41-1) 3.  Indeed, in the parties' JSRs, First Look repeatedly challenged USAGM's failure to even *attempt* to remedy its purported backlog and administrative burden.  For example, in the April 1, 2021 JSR, First Look noted the inconsistency between USGAM's failure to even post a position to hire additional FOIA attorneys when it had spent "nearly $4 million of its budget hiring two private law firms" to investigate numerous agency employees.  JSR (R.15); *see also* JSRs (R.16) (April 30, 2021); (R.17) (June 1, 2021) (First Look noted that USAGM's purported staffing constraints "cannot justify USAGM's" delay as "USAGM has had nearly 7 months since this action was

initiated to hire replacement personnel"); (R.18-20) (June 30, 2021, July 30, 2021 and August 31, 2021) (similar). USAGM's own declaration acknowledges the agency's single FOIA attorney "departed the agency in April 2021, and was not replaced until 2023." Resp. Mot. Fees (R. 41-1) 7. In other words, for two or more years, in spite of FOIA's statutory deadline, USAGM did nothing to fill the vacant positions it blamed for its delays, and now it again seeks to rely on that same self-created staffing shortage and backlog to avoid fees. *See Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 319 (D.D.C. 2020) (FOIA's purpose would not be served "if agencies [could] withhold documents for indeterminant periods . . . because they have too many FOIA requests and too few FOIA staff members.'") (citation omitted).[7]

Embracing USAGM's and the District Court's logic would mean accepting that First Look should have telepathically deduced that USAGM was going to produce documents at some point at a reasonable pace, despite all evidence to the contrary, including: USAGM's pre-lawsuit silence regarding the FOIA request, even as to USAGM's *intention* to respond; its failure to inform First Look at any point

---

[7] The District Court deferred to USAGM's excuses to a fault, including: accepting USAGM's five-month delay in beginning to produce missing attachments because its staff was "deal[ing] with other matters," without inquiring into those matters and why they merited priority over USAGM's statutory duties under FOIA; and crediting USAGM with giving "explanations" of its delay and "assurances" it intended to disclose, when USAGM gave no such explanations or assurances in the nearly 2 months before the litigation commenced. R.51 (Op), 3,7-8.

pre-suit regarding its purported administrative burdens, whether it had even begun processing the request, or its intended production schedule; and its failure to produce thousands of missing pages until First Look discovered and pressed the issue.

Such a holding would have grave consequences for FOIA plaintiffs and subvert the statutory fees provision. FOIA plaintiffs would be forced to wait endlessly for the *possibility* that an agency might respond at a chosen moment, long after the pressing controversies hitting the headlines evaporate. But as FOIA's legislative history confirms, this is antithetical to FOIA's imperative of affording timely access to agency records. *See* H. Rep. No. 93-876, 126 (1974) (agency delay "often tantamount to denial").

Moreover, the fees provision was expressly intended to "remove the incentive for administrative resistance to disclosure requests." *Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008). This Circuit should not permit USAGM to exploit its information advantage – that it knew what it was doing in the 55 days of silence between First Look's request and the lawsuit, while First Look had no way of knowing – especially because the unrebutted record evidence indicates that USAGM was doing *nothing* at all to process the request. *See Protect the Pub.'s Tr. v. IRS*, 2024 WL 663427, at *7 (D.D.C. Feb. 16, 2024) ("Agencies can easily exploit this imbalance if all it takes to avoid paying attorney's fees is to change position once the plaintiff files suit."). This appeal goes to the heart of Congress's 2007 FOIA

amendments, which were enacted precisely to dissuade the behavior USAGM employed in this case: providing a FOIA requestor with no information for weeks and weeks after its request, reversing course after the lawsuit is commenced, and ultimately claiming it is not required to pay fees. USAGM's attempt to resolve this case at summary disposition should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny USAGM's motion for summary affirmance.

Dated: February 18, 2025        Respectfully submitted,

        By:   */s/ Burt Braverman*
             Burt Braverman
             Meenakshi Krishnan
             DAVIS WRIGHT TREMAINE LLP
             1301 K Street, NW
             Suite 500 East
             Washington, D.C. 20005
             (202) 973-4200
             burtbraverman@dwt.com
             meenakshikrishnan@dwt.com

             Thomas R. Burke
             DAVIS WRIGHT TREMAINE LLP
             50 California Street, Suite 2300
             San Francisco, CA 94111
             415-276-6552
             thomasburke@dwt.com

             *Counsel for Plaintiff-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(2)(A), in that it contains 5,199 words, is in fourteen-point font and utilizes Times New Roman typeface.

                                         */s/ Burt Braverman*

Burt Braverman

DAVIS WRIGHT TREMAINE LLP

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, the foregoing was served on all parties through the Court's CM/ECF system.

_____/s/ *Burt Braverman*_____
Burt Braverman
DAVIS WRIGHT TREMAINE LLP

*Counsel for Plaintiff-Appellant*